1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIERRA CLUB, et al.,

         Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF STATE, et al.,

         Defendants.

_____/

No. C 09-04086 SI

**ORDER GRANTING DEFENDANTS'
MOTION TO TRANSFER VENUE AND
TRANSFERRING ACTION TO
DISTRICT OF MINNESOTA**

Defendants have filed a motion to transfer venue to the District of Minnesota or another appropriate district. Plaintiffs oppose the motion. This matter is currently set for hearing on September 25, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing.[1] Having considered the papers submitted, and for good cause shown, the Court GRANTS defendant's motion.

**BACKGROUND**

This environmental dispute centers on the planned construction and operation of a system of pipelines to carry crude oil from sources in Alberta, Canada to refineries in the United States. The primary pipeline, known as the Alberta Clipper Pipeline, would cross the United States-Canada border at Neche, North Dakota, and would run across the state of Minnesota to an endpoint in Superior, Wisconsin. *See* State Department's Record of Decision ("ROD") [Docket No. 8-8]. The developer of

[1] The parties filed a stipulation to continue the hearing date on defendants' motion to September 28 or 29, 2009. Having vacated the hearing, the parties' proposed stipulation is rendered moot. [Docket No. 46].

the pipeline project, Enbridge Energy, LP ("Enbridge"), sought permits from a number of federal and state government agencies. These included a Presidential permit from the State Department to construct and maintain facilities at the international border; dredge-and-fill permits under the Clean Water Act and the Rivers and Harbors Act from the Army Corps of Engineers ("Army Corps"); a special use permit from the Forest Service to construct the pipeline through the Chippewa National Forest; a wastewater discharge permit from the Environmental Protection Agency; and a permit from the Bureau of Indian Affairs to allow the pipeline to cross Indian lands. The State Department assumed responsibility for conducting environmental review of the proposal and coordinating efforts among the various agencies involved. After two years of study and a public comment period, the State Department issued an ROD on August 3, 2009, indicating the Department's intention to issue a Presidential permit to Enbridge. *Id.* On August 20, 2009, the State Department issued the Presidential permit. *See* Presidential Permit [Docket No. 44-3]; Notice of Issuance of Presidential Permit, 74 Fed. Reg. 43212-01 (Aug. 26, 2009).

Plaintiffs filed a complaint on September 3, 2009 against the State Department, the Army Corps, and related officials,[2] alleging violations of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* The same day, plaintiffs also moved for a temporary restraining order and preliminary injunction enjoining commencement of the project. In opposing the motion for a temporary restraining order and preliminary injunction, defendants challenged the appropriateness of venue in this district and sought *sua sponte* transfer of the action. In an order dated September 9, 2009, the Court denied plaintiffs' motion for a temporary injunction, deferred consideration of the motion for preliminary injunction, and directed the parties to brief the question of venue. *See* Sept. 9, 2009 Order [Docket No. 35].

Presently before the Court is defendant's motion to transfer venue to the District of Minnesota, or in the alternative the District of North Dakota, the District of Wisconsin, or the District Court for the District of Columbia.

---

[2] Enbridge appears as an intervenor in this action.

**United States District Court**
For the Northern District of California

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal citations and quotation marks omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000).

To support a motion for transfer, the moving party must show: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992). Once venue is determined to be proper in both districts, courts use the following factors to evaluate whether a transfer of venue would be more convenient to the parties and the witnesses and would promote the interests of justice: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). In an environmental case brought pursuant to the Administrative Procedure Act ("APA"), like this one, the most important factors for the court to consider are the plaintiff's choice of forum and any local interest in the controversy. This is because, in APA cases,

> the factors set forth in the transfer statute, § 1404(a), and cases applying it . . . are for the most part not implicated. There are no witnesses to consider, and documentary evidence is as easily provided in one venue as another, especially in this age of electronic transmission. The proposed transferee courts are equally familiar with the environmental laws at issue. . . . [I]n most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in having localized controversies decided at home.

*Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C 07-0894 EDL, 2007 WL 2023515, at

*5 (July 12, 2007).

**DISCUSSION**

The parties do not dispute that, under the relevant statutory standards, venue is proper in either this district or in the District of Minnesota. *See* 28 U.S.C. § 1391(e). The key dispute, therefore, is whether the District of Minnesota's interest in deciding the controversy outweighs plaintiffs' choice of forum in this district.

**1.    Plaintiff's Choice of Forum**

In ruling on motions to transfer venue, courts typically apply a strong presumption in favor of plaintiff's choice of forum. *Van Dusen*, 157 F. Supp. 2d at 1106. Defendants bear the burden of overcoming this presumption to demonstrate that the balance of inconveniences substantially weighs in favor of transfer. *See Decker Coal v. Cont'l Edison*, 805 F.2d 834, 843 (9th Cir. 1986). While plaintiff's choice of forum is to be given great weight, that choice is not the final word. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases involving forum shopping and cases in which "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Mission Ins. Co. v. Purina Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Plaintiffs opted to bring suit in the Northern District of California even though three out of four plaintiff organizations are located outside California, the decisions at issue were made outside California, and the land that will be affected by the challenged action is hundreds of miles from California. None of the operative facts occurred in this district, and that this district has little interest in the parties or subject matter, other than the single plaintiff (Sierra Club) whose headquarters are located in San Francisco. Accordingly, plaintiffs' choice of forum is not entitled to significant deference.

2.      **Local Interest in the Controversy**

"Land is a localized interest because its management directly touches local citizens." *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004).  Courts have observed that environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action.  *See, e.g.*, *Ctr. for Biological Diversity*, at *6 (transferring case to District of Alaska because "none of the operative facts occurred within this district and the challenged [Fish & Wildlife Service] decision . . . [approving] industrial oil and gas exploration, development, and production activities in Alaska is one in which Alaska and its residents have a great interest"); *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 n.5 (D.D.C. 1996) (transferring Endangered Species Act case to District Court of the Virgin Islands where relevant species' habitats were located in the Virgin Islands and challenged agency actions took place there).

The majority of the activities underlying this suit took place within or very near the jurisdiction of the District of Minnesota.  First, although the State Department's issuance of the Presidential permit took place in Washington, D.C., the permit was issued after studying the affected locations in Minnesota and Wisconsin, consulting with tribal leaders in these two states, and holding public meetings in Minnesota.  *See* Presidential Permit;  ROD at 23; EIS at 1-13 – 1-14 [Docket No. 8-5].  The Army Corps' dredge and fill permits were issued by its district office in St. Paul, Minnesota after study in Minnesota and Wisconsin.  Army Corps' ROD and permit [Docket No. 44-5].  Moreover, the rights and interests of persons living in and near Minnesota will be substantially affected by the outcome of the suit.  Construction of the pipeline will have not only environmental and aesthetic implications for local people in Minnesota and surrounding border regions of North Dakota and Wisconsin, but significant economic implications as well.  As defendants point out, all of plaintiffs' own standing declarants—including declarants representing Sierra Club, the sole plaintiff located within this district—reside in Minnesota or Wisconsin and allege injuries related to the construction and operation of the pipelines in those states.  *See, e.g.*, Norrgard Decl. ¶ 4 [Docket No. 8-28].

In their opposition to defendants' motion for transfer of venue, plaintiffs assert that in bringing suit in this district, they were particularly concerned about the effects the pipeline's greenhouse gas emissions will have on the climate of California.  Plaintiffs assert that the thousands of Sierra Club

members who live in California will be directly affected by this climate change, including global warming resulting from greenhouse gas emissions from construction and operation of the pipeline. Plaintiffs also state that these adverse impacts will undermine California's efforts—supported by environmental organizations like the Sierra Club—to implement progressive environmental policies and reduce its carbon emissions. Even assuming all of this is true, global warming is only one of the potential environmental effects of this project, and one that is somewhat removed in time. By contrast, other impacts, including environmental, aesthetic, and economic, will be felt by Minnesotans immediately.

Accordingly, the Court finds that Minnesota's localized interest in deciding the case weighs strongly in favor of transfer.

**3.      Other Factors**

The Court observes that other factors also weigh in favor of transferring this action to the District of Minnesota. First, litigating this action in the District of Minnesota will be no less convenient for plaintiffs than litigating the action in this district. Two of the four plaintiff organizations, the Minnesota Center for Environmental Advocacy and the Indigenous Environmental Network, are located in Minnesota. *See* Complaint ¶¶ 15a, 16a. [Docket No. 1]. Although one plaintiff organization, the Sierra Club, is headquartered in San Francisco, *see id.* ¶ 14a, the Sierra Club is a national organization with offices throughout the country. Second, although the Court notes that both parties have stated they do not anticipate a need for discovery, Minnesota will be a more convenient forum for witnesses in the event any depositions or testimony are required.

In sum, the Court is persuaded that transferring this case is in the interests of justice and will maximize the convenience of all interested persons.

*///*

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to transfer venue and ORDERS this action transferred to the District of Minnesota. [Docket No. 44].

**IT IS SO ORDERED.**

Dated: September 23, 2009

_____
SUSAN ILLSTON
United States District Judge

**United States District Court**
For the Northern District of California

7